United States District Court
Southern District of Texas
FILED

MAR 2 4 2003

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

**INOCENCIO LARA TRUJILLO,**
**Petitioner,**

**vs.**                                    Docket No: (CA B-02-177)

**UNITED STATES OF AMERICA,**
**Respondent,**
_____/

**PETITIONER'S MOTION REQUESTING CERTIFICATE OF**
**APPEALABILITY PURSUANT TO TITLE 28 U.S.C. § 2253**

COMES NOW, Inocencio Lara Trujillo, *pro-se*, with this his motion for

Certificate of Appealability pursuant to Title 28 U.S.C. section 2253(c)(1) on this

Court's denial of Petitioner's 2255 Petition dated January 23, 2003.

**I. SUMMARY OF THE PROCEDURAL HISTORY**

1. On June 6, 2001, Petitioner, Inocencio Lara Trujillo, was charged by

indictment with being illegally present in the United States subsequent to his

deportation following an aggravated felony conviction, in violation of 8 U.S.C. §

1326(a) & (b)(2). (Docket Entry, D. E. 1)[1]

---

[1] The relevant portions of this section reads as follows:

2. On July 27, 2001, before the Honorable Filemon B. Vela, United States District Judge for the Southern District of Texas, Brownsville Division, Mr. Trujillo entered a plea of guilty to the charge in the indictment. (D. E. 7)

3. On October 5, 2001, the district court sentenced Mr. Trujillo to serve sixty months in the custody of the Bureau of Prisons and a three-year term of supervised release. (D. E. 13)

4. A Notice of Appeal was filed and the sentence and conviction was affirmed on August 29, 2002.  (D. E. 19 & 20)

---

§ 1326. Reentry of removed aliens

(a) In general

Subject to subsection (b) of this section, any alien who--

**(1)** has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

**(2)** enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his re-embarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens

Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--

**(1)** whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;

**(2)** whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;...

2

5. On September 16, 2002, Petitioner filed a motion to Correct, Vacate and/or Set-Aside Sentence, pursuant to Title 28 U.S.C. § 2255. (D. E. 18)

6. A Government response was provided on November 4, 2002 (D. E. 22)

7. On January 24, 2003, this Court denied Petitioner's 28 U.S.C. § 2255 petition on the merits.

Petitioner now timely files this request for a Certificate of Appealability pursuant to Title 28 U.S.C. § 2253 on allegations of a substantial violation of a Constitutional right.[2]

---

[2] A Notice of Appeal and a motion for Certificate of Appealability were also filed in conjunction with this request.

## ARGUMENT

### I. Standard Of Review For Granting A Certificate Of Appealability

Before a Petitioner can appeal the denial of his 2255 Petition, he must first show a violation of a substantial constitutional right.

Specifically, Title 28 U.S.C. Section 2253(c)(1) reads:

> (a) In a habeas proceeding or a proceeding under section 2255 before a District Judge, the final order shall be subject to review, on appeal, by the Court of Appeals for Certificate of Appeals for the circuit in which the proceeding is held.

> \* \* \* \* \*

> (c)(1) Unless a Circuit Justice or Judge issues a Certificate of Appealability an appeal may not be taken to the Court of appeals from –

> (B) The final order in a proceeding under section 2255;

> (2) A Certificate of Appelability may issue under paragraph;

> (1) Only if the applicant has made a substantial showing of the denial of a constitutional right.

*Id.* 28 U.S.C. Section 2253

Section 2253(c)(3) most likely means that the circuit court may consider only those claims indicated in the Certificate of Appealability. See, e.g., *Sylvester v. Hanles*, 140 F.3d 713, 716 (7th Cir. 1998)(appellate review limited to issues specified in certificate of appealability); *Carter v. Hopkins,* 151 F.3d 872, 874 (8th Cir. 1998) (same); *Ross v. Ward*, 165 F.3d 793, 797 (10th Cir. 1999)(appellate review limited to issues specified in certificate of appealability absent substantial

showing of denial of constitutional right); *Murray v. United States.,* 145 F,3d 1249, 1250 (11th Cir. 1998) (per curiam)(appellate review limited to issues specified in certificate of appealability). See, e.g., *United States. v. Sanders*, 157 F.3d 302. 304 (5th Cir. 1998)(district court's findings of fact are reviewed for clear error); *Gray-Bey v. United States*, 156 F.3d 733, 737 (7th Cir. 1998)(same); *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995)(same). A finding that the district court's factual findings are clearly erroneous is not common. But see, e.g., *United States v. Arellanes,* 767 F.2d 1353, 1357 (9th Cir. 1985)(magistrate judge's findings that no factual issues in dispute clearly erroneous when manifest contradictions existed between statements at plea hearing and written embodiment: remanded for evidentiary hearing).

## I. A CERTIFICATE OF APPEALABILITY SHOULD BE GRANTED TO DETERMINE IF THE ACTIONS OF TRIAL COUNSEL AND APPELLATE COUNSEL'S ERRORS HAVE REACHED THE LEVEL OF A "REASONABLE PROBABILITY OF A DIFFERENT OUTCOME" AS REQUIRED IN THE *STRICKLAND v. WASHINGTON* [3] STANDARD OF REVIEW FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS THUS MEETING THE REQUIREMENTS OF A SUBSTANTIAL SHOWING OF A CONSTITUTIONAL VIOLATION

Mr. Trujillo alleges that his trial attorney was ineffective for failing to advice him of all the required elements that must be proven in order for the Government to convict him of the alleged offense.

Specifically, Mr Trujillo was charged with violating Title 8 U.S.C. § 1326(a) & (b)(2). A specific provision of Title 8 U.S.C. § 1326(b)(2) requires that the Government prove beyond a reasonable doubt that Mr. Trujillo was in fact convicted of an "aggravated felony." This element is a requirement as per the direct and explicit language of the statute.[4]

Notwithstanding this required and necessary element for a conviction as charged in the indictment, Mr. Trujillo was placed in the extraordinary position of having to provide a guilty plea to a charge in which he was not made aware of all the required elements.    Specifically, counsel failed to advice and explains to

---

[3] 466 U.S. 688 (1984)

[4] Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--

(2) whose removal was subsequent to a conviction for commission of an *aggravated felony*, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;...

Petitioner that a prior "aggravated felony" conviction is an element that is required for the enhanced statute of conviction.

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id.* 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). The Supreme Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id* The Court clarified that this reference to "highly deferential scrutiny"[5] referred only to the first or performance prong of the test and meant that,

> "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

---

[5] The Court stated, "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington*, 466 U.S. at 695.

*Id. Strickland v. Washington*, 466 U.S. at 689-691

The Court added that,

> "... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. ***In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary." Id.***

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[6] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). *See also*; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

The Supreme Court noted that,

> "a single, serious error may support a claim of ineffective assistance of counsel."

*Id. Kimmelman v. Morrison*, 477 U.S. at 384.

The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even

---

[6] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington*, 466 U.S. at 691.

where, "counsel's performance at trial was "generally creditable enough", and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U.S. at 386. [7]

Mr. Trujillo does not only have to show that counsel's ineffectiveness more than likely affected the outcome of the proceedings, but he must also show prejudice from the results of the proceedings before relief can be granted.

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.

More specifically, Justice O'Connor set forth the now well known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[7] See also *Murray v. Carrier*, 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States*, 871 F.Supp. 251, 255 & [n.8] (E.D. Va. 1994) (finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in. the PSR", but pointing out that "error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.); *United States v. Al King Jones*, 2001 U.S. Dist. LEXIS 1740 (ED. LA 2-9-01) (same),

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Id. Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000)[8]

The Court delegating an ineffectiveness claim should consider the totality of the factors which guided the decision maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors.

---

[8] *See also United States v. Day,* 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992) (same) and *United States v. Loghery,* 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some Courts have held that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [Petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding", *Williams v. Taylor,* 120 S. Ct, 1495, 1512-16, 146 L. Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where the "different outcome" would be contrary to the law. *Id.* As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell,*:

> "... today's decision will, in the vast majority of cases, have no effect on the prejudice inquiry under *Strickland.* The determinative question - whether there is 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' ... remains unchanged," *Id.* 506 U.S. at 373 (O'Connor) (concurring).

> "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at 699.

Where through "hindsight"[9] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. *Strickland,* 466 U.S. at 694-95; *United States v. Glover,* 121 S.Ct. 696 (2001); *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).[10]

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of a consideration for a favorable adjustment or downward departure

---

[9]*Lockhart v. Fretwell*, 122 L.Ed.2d at 189-91; *Mayo v. Henderson,* 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

[10] In *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding". *Williams v. Taylor*, 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where a "different outcome" would be contrary to the law. *Id.  See also: Mays v. Gibson,* (10th Cir. 2000)(citing *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon,* 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

under the United States Sentencing Guidelines. *United States v. Glover*, 121 S.Ct. 696 (2001)(rejecting Court of Appeals' rule that only a "substantial" change in application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*).[11]

The *Strickland* test for "prejudice" is applicable to cases where a criminal defendant is challenging his conviction or sentence due to actual ineffective assistance of counsel, in the prosecution of his direct appeal, *Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995),[12] with the caveat that "prejudice" in this type of case

---

[11] *See also United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996) ("The failure to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel") (collecting cases); *United States v Kissick*, 69 F.3d 1048, 1056 (10th Cir. 1995) (same) and *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (same) and *United States v. Acklen*, 47 F.3d 739, 743 (5th Cir. 1995) (same) and *United States v. Headley*, 923 F.2d 1079, 1083-84 (3rd Cir. 1991) (same) and *Smith v. United States*, 871 F.Supp. 251, 255 (E.D. Va. 1994) (same) and *Cabello v. United States*, 884 F.Supp. 298, 302-303 (N.D. MD 1995) (same) and *Spearman v. United States*, 860 F.Supp. 1234, 1244-46 (E.D. Mich. 1994) (failure to provide grounds for potential downward departure under guidelines ineffective assistance) and *United States v. Partee*, 31 F.3d 529, 534 (7th Cir. 1994) (failure to move court for downward departure under guidelines may constitute "prejudice" under *Strickland*) and *United States v. Graham*, 884 F.Supp. 13, 14 and [n.1] (D. DC 1995)(same) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996)(unprofessional failure to challenge relevant conduct as violative of U.S.S.G.'S. § 1B1.3 prejudiced defendant within the meaning of *Strickland*) and *United States v. Londono*, 998 U.S. App. LEXIS 7482 (7th Cir. 1997)(unprofessional failure to challenge enhancement for "leadership role" prejudiced defendant within the meaning of Strickland).

[12] *See also United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (holding that counsel was deficient because he did not "keep abreast of legal developments related to [Petitioner's] case" which would have revealed a solid and meritorious appellate issue); *United States v. Mannino*, 212 F.3d 835; 2000 U.S. App. LEXIS 10382 (2nd Cir. 2000); *Mayo v Henderson*, 13 F.3d 528 (2nd Cir. 1994); *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992); *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989); *Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987); *Grady v. Artuz*, 931 F.Supp. 1048 (S.D.N.Y. 1996); *Daniel v. Thigpen*, 742 F.Supp. 1535 (M.D. Ala. 1990)

is limited to the "outcome" of the direct appeal. It does not require the defendant to demonstrate that he would be "successful on remand"; only that there is a *reasonable probability* that he would have had his conviction and/or sentence vacated and/or remanded to the lower court. *United States v. Mannino*, 212 F.3d 835 (2nd Cir. 2000).

Accordingly, counsel's failure to research the relevant statutes as they relate to Mr. Trujillo's case, coupled with his failure to properly advise Mr. Trujillo of all the required elements for an enhanced sentence and conviction have reached the level of a substantial violation of a constitutional right thus requiring the granting of a Certificate of Appealability.

## II. A CERTIFICATE OF APPEALABILITY IS REQUIRED TO DETERMINE IF THE COURT ERRONEOUSLY RELIED ON THE "CAUSE AND PREJUDICE" STANDARD TO DENY MR. TRUJILLO'S § 2255 PETITION

This Court in denying Mr. Trujillo's claims on the § 2255 petition relied on Petitioner's failure to address his issues on direct appeal, claiming that Mr. Trujillo could not meet the "cause and prejudice requirements" of *United States v. Frady*, 456 U.S. 152 (1982) *Id.* Govt. Resp. at 5. This decision is in direct conflict with current precedent case law of his circuit as it shifts the burden of the "cause and prejudice." Mr. Trujillo did not raise this issue on direct appeal because the facts set forth in his § 2255 were and are material to the claim of ineffective assistance of counsel, but were not part of the record for direct appeal. Therefore, "Cause" is established for his

failure to raise the claim prior to this motion. See, *Ciak v. United States*, 59 F.3d 296, 303-304 (2nd Cir. 1995); *Bond v. United States*, 1 F.3d 631 (7th Cir. 1994); *Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994) (prisoner's failure to raise ineffective assistance of counsel claim on direct appeal will result in forfeiture of right to bring § 2255 motion only when claim is based entirely on trial record); *English v. United States*, 42 F.3d 473, 481 (9th Cir. 1994)(holding that section 2255 claims are waived for failure to raise them on direct appeal only if (1) a specific procedural rule required the defendant to raise the issues on direct appeal or (2) the failure to raise the issues was a deliberate bypass of direct review).

Even if the record on appeal is subsequently determined to have been sufficient to have raised the instant claims of ineffective assistance of counsel, cause exists for the failure of Mr. Trujillo to raise the claims prior to this motion because it reasonably appeared at the time of filing the appeal that new evidence might be necessary to support his claim. Furthermore, cause exists for the failure of Mr. Trujillo to raise the instant claims of ineffective assistance of counsel in his direct appeal because such claims should not be brought in direct appeal even if the record is or was sufficient to raise the claims. *United States v. Hardamon*, 188 F.3d 843 (7th Cir. 1999); *United States v. Galloway*, 56 F.3d 1239, 1240-43 (10th Cir. 1995) (en banc); *United States v. Tunstall*, 17 F.3d 245, 246 [4] (8th Cir. 1994).

Mr. Trujillo has properly pleaded "prejudice" by pleading the "fundamental defect" in his sentence, as set forth herein. *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "Prejudice" to Mr. Trujillo, within the meaning of *United States v. Frady*, 456

14

U.S. 152, (1982), as construed in case law such as *United States v. De La Fuente*, 8 F.3d 1333, 1336-37 (9th Cir. 1993) is established by the fact that absent relief by this Court, Mr. Trujillo's sentence is in violation of the Constitution and laws of the United States. *Id. See also Isabel v. United States,* 980 F.2d 60, 64 (1st Cir. 1992) ("prejudice" established, for purpose of "procedural bypass question" where § 2255 movant's "sentencing range would be reduced" if successful on claim).

Thus, based on the foregoing, and the absence of any knowing and intelligent waiver by Mr. Trujillo of his right to bring his § 2255 motion, this Court was not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

Accordingly, a Certificate of Appealability should be granted to determine if the Court erroneously relied on the "cause and prejudice" standard of review when it failed to grant relief on the merits of Mr. Trujillo's allegations. See, *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).[13]

---

[13] The United States Supreme Court clarified § 2253's requirements. To make the required showing, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.;'" *Id.* at 483-84, 120 S.Ct. 1595 (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). Also, (2) when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue if the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, *and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.*

**III. A CERTIFICATE OF APPEALABILITY IS REQUIRED TO DETERMINE IF MR. TRUJILLO'S PLEA OF GUILT WAS "KNOWINGLY AND INTELLIGENTLY" PROVIDED WHEN THE COURT FAILED TO ADVICE MR. TRUJILLO OF ALL THE RELEVANT ELEMENTS REQUIRED FOR HIS PLEA OF GUILT AS TO THE CHARGES OF THE INDICTMENT**

Mr. Trujillo respectfully requests that this Court grant this request for a Certificate of Appealability to determine if he in fact did provide a knowingly and intelligent plea of guilt to this Court when neither the Court, the Government nor his attorney advised him that the fact of a prior "aggravated felony conviction" which is an element for the enhanced sentence under Title 8 U.S.C. § 1326(b)(2), must be charged in the indictment and proven beyond a reasonable doubt.   Absent such knowledge of this element and a knowledgeable waiver, the plea of guilt cannot be knowledgeably provided before this Court.

**A. Prior "Aggravated Felony" Conviction as an "Element" That Must Be Knowingly and Voluntarily Waived During the Rule 11 Hearing**

The Courts have already determined that pleading guilty does not waive a defendant's right to indictment by a grand jury. *United States v Mualbam*, 626 F.2d 503, 509 (5th Cir. 1980) "waiver of an indictment is an act clothed in formality… a waiver must be made in open court."  The defendants must be informed of the nature of the cause and the accusation, only then must the court be satisfied that the defendant's waive their rights knowingly, intelligently, and voluntarily." *United States v. Ferguson,* 758 F.2d 843, 850-51 (2nd Cir. 1985).

Despite the extreme difference in the available statutory penalties, the District Court has placed Mr. Trujillo in the position, and has accepted his guilty plea, without advising him that he will be sentenced based on an element of an "aggravated prior" conviction that must be decided by the jury, or advising him that the prior will be decided by the sentencing Court by a preponderance of the evidence standard.

A well respected treatise in criminal law discussed the inextricable link between punishment and offense elements and noted that value and quantity facts were elements to be proven by a Jury. *Knoll & Singer* 22 Seattle, U.S. Rev, at 1062, 1081, (the historical importance of punishment as the litmus test in determining what constituted an element of the offense prior to *McMilliam v. Pennsylvania,* 447 U.S. at 86-87, 106 S.Ct. 2411).

The Supreme Court in *Apprendi v. New Jersey,* 120 S.Ct. 2348 (2000) discussed the "novelty of the distinction between an element of an offense and a sentencing factor." *Id. at 2384.* This distinction simply did not exist until recent case law, and Judge's historically had very little explicit discretion in sentencing, except to take into consideration factors that affected a judgment within a range prescribed by statute.

"Due Process and associate jury protections are not simply concerned with a defendant's guilt or innocence, but also extends to the length of that sentence." *Id. at 2389-90*

In essence, a prior "aggravated felony conviction" should be listed in the indictment, since it is an element of an offense which determines separate levels of severity. This "critical element" has now reached the level of all the other elements in our judicial system that must be intelligently and voluntarily waived by a defendant for his plea to be considered valid.

Also, this "missing element" has now become a pivotal section of the charged offense that must now be waived by a defendant in order for his guilty plea to be considered intelligently and voluntarily provided.

When a defendant is advised, or not advised by his trial counsel, that his "prior aggravated felony" conviction is a "critical element" that must be waived, coupled with the District Court's failure to advise a defendant of such an element that he is waiving, causes a defendant's plea to be submitted without a knowingly and intelligent waiver of all the critical elements required for such a knowledgeable decision.

## B. Mr. Trujillo's Plea Was Not Voluntary and Knowingly Provided Absent a Waiver Of All "Critical Elements" Which Constitute His Charged Offense

The Fourteenth Amendment Due Process clause requires that a plea of guilt be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." *Gady v. Linahan* 780 F.2d 935, 943 (11th Cir. 1986)  A plea of guilt "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." *Henderson v. Morgan,* 426 U.S. 637, 644-45 (1976).

The Supreme Court stated in *Henderson* that "the voluntariness requirement is not satisfied unless the defendant receives *real notice* of the true nature of the charged crime." *Id.*

In Mr. Trujillo's case, as has occurred in District Courts nationwide, absent such a voluntary waiver of such an element, a guilty plea be voluntarily provided. *See also Frazier v. United States,* 18 F.3d 778 (9th Cir. 1994), *Staro v Dugger,* 921 F.2d 1125, 1142 (11th Cir. 1991) (en banc), (recognizing that prior to entering a guilty plea, a defendant must receive information of the nature of the offense and the elements of the crime.) *Id.*  At the very least, "Due Process requires that the defendant, prior to tendering a plea of guilty receive a description of the elements of the charged offense..." *Gady v. Linahan,* at 943.

In sum, neither should a district court be held to sentence a defendant to an infamous crime until it has had an opportunity to review all the pertinent facts of

the case, nor should a defendant be held to make a decision without knowing all the "critical elements" to the crime for which he is pleading guilty.

WHEREFORE, Petitioner Trujillo respectfully prays that this Honorable Court **GRANT** this request for a Certificate of Appealability since Petitioner has suffered a Sixth and Fifth Amendment violation of his Constitutional Rights by the court's failure to advise him that a prior "aggravated felony" was a "critical element" of the offense that must be knowingly waived.

## IV. A CERTIFICATE OF APPEALABILITY MUST BE GRANTED DUE TO REVIEW IF TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE COURT'S AMENDING OF THE INDICTMENT AT SENTENCING

### A. Trial Counsel Was Ineffective For Failing To Motion The Court For Dismissal Of The Indictment Due To The Court's Improper Amending Of The Indictment At Sentencing

Mr. Trujillo avers that a Certificate of Appealability is required to determine if counsel's failure to object to the District Court's amending of the indictment at the time of sentencing has reached the level of ineffectiveness required for the showing of a "substantial violation of a constitutional right" as required by Title 28 U.S.C. § 2253. It is Mr. Trujillo's position that the District Court amends the indictment when it sentences him to a statutory violation, 8 U.S.C. § 1326(b)(2), when the principle element of an "aggravated felony conviction" was not listed in the indictment but was relied on by the District Court at the sentencing hearing.

As a result, Mr. Trujillo was sentence beyond the statutory maximum as determined under Title 8 U.S.C. § 1326(a) of 2 years which has caused an amendment of the indictment to occur at sentencing.

The Fifth Amendment expressly prohibits any federal prosecution except upon indictment by a grand jury. A long, unbroken line of Supreme Court authority holds that the imposition of sentence for an offense that was never charged by the grand jury is per se reversible error and may not stand on the theory that the error is harmless or was not preserved. This rule is based on the paramount importance of the independent grand jury to the Framers of the Constitution, who chose to make its voice "indispensable to the power of the court" to try the defendant for the offense charged. *Ex parte Bain*, 121 U.S. 1 (1887); accord *Stirone v. United States*, 361 U.S. 212 (1960). The Second Circuit in *United States v. Tran,* 234 F.3d 798 (2nd Cir. 2000), therefore, applied black-letter law when it held that *the sentence for a greater offense than that charged in the indictment must be vacated, without application of the harmless error or plain error doctrine.*

The Supreme Court's decision in *Neder v. United States,* 527 U.S. 1 (1999), has no application to the failure to the grand jury to charge an essential element of the offense as required by the Fifth Amendment. In *Neder* the Supreme Court held only that the *trial error of failing to submit an element to the petit jury could be harmless* where the evidence of that element was so indisputable that a reasonable

21

jury could not have found otherwise. The *Neder* decision affirmed the principle that no harmless error review applies to a structural error that affects the "framework" of the trial, as opposed to the trial error whose impact on the verdict can be assessed.

The failure of the grand jury to charge an offense is, by contrast, classic and quintessential structural error. The grand jury indictment is not susceptible to harmless error analysis. The independent grand jury has unfettered discretion to charge a greater or lesser offense; indeed, its very purpose is its independence. For this reason, no court can determine, simply by reviewing the evidence at trial, that the grand jury would have charged the greater offense.

Plain error analysis likewise has no application to the grand jury's failure to charge a greater offense. A defendant cannot be expected to object to not being charged with a greater offense, and Federal Rules of Criminal Procedure 12(b) specifically provides that the court shall notice such an error at any time.

Moreover, if an objection were required, a sentence for an offense never charged by the grand jury would necessarily meet the standard for plain error under *United States v. Olano,* 507 U.S. 725 (1993). The Supreme Court has held that structural error must be corrected as plain error.

Finally, a sentence for an offense other than that charged by the grand jury is such a fundamental defect that it affects the "fairness, integrity and public reputation" of the proceedings.

### B. More Than A Century Of Supreme Court Jurisprudence Supports The Rule That The Failure Of The Indictment To Charge An Element Of The Offense Requires Automatic Vacatur Of The Conviction

The Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury". U.S. Const. Amend. V. This prohibition has always included the "universal" principle of "paramount" importance: "that every ingredient of the offense must be accurately and clearly expressed;" or, in other words: "that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." *United States v. Reese*, 92 U.S. 214, 232 (1875), quoted in *Apprendi*, 530 U.S. at 490, n. 15; accord *United States v. Cook*, 84 U.S. 168; 17 Wall 174 (1872). Moreover, this principle "pervades the entire system of the adjudged law of criminal procedure,... we can no more escape from it than from the atmosphere which surrounds us." *Reese* 92 U.S. at 232.

That the failure of the grand jury to charge the defendant with an element of an offense is a jurisdictional bar to prosecution for that offense has been settled by the Supreme Court since its decision in *Ex parte Bain*, in 1887. 121 U.S. 1, 10-11, 7 S.Ct. 781, 786 (1887). In *Bain* the Supreme Court held that a federal court lacks

the power to amend an indictment without the vote of the grand jury, or to convict

or sentence the defendant on an offense not charged in the indictment. The Court

held that the Fifth Amendment to the Constitution specifically bars prosecution and

sentencing on any charge other than that voted by the Grand Jury. 7 S.Ct. at 784.

Significantly, the *Bain* Court rejected the government's version of the harmless

error doctrine, "that no injury was done" by the amendment and that "the grand

jury would have found the indictment without [stricken] language:"

> "But it is not for the court to say whether they would or not.... If it lies
> within the province of a court to change the charging part of an indictment
> to suit its own notions of what it ought to have been, or if that the grand jury
> would probably have made if their attention had been called to suggested
> changes, the great importance which the common law attaches to an
> indictment by Grand Jury, as a prerequisite to a prisoner's trial for a crime,
> and without which the constitution says "no person shall be held to answer"
> may be frittered away until its value is almost destroyed."

*Id. Bain,* 121 S.Ct. 1011

Holding that "an indictment found by a grand jury" was "indispensable to the

power of the court to try the petitioner for the crime with which he was charged,"

the Court ruled that the conviction and sentence on the amended indictment was a

nullity. *Id.* at 785, 787-88 (emphasis added).

The Supreme Court revisited and explicitly reaffirmed *Bain* in *Stirone v.

United States,* 361 U.S. 212 (1960), a case where the defendant had been indicted

for a Hobbs Act violation charging one particular effect on interstate commerce but

then was convicted on a jury instruction charging a different effect on interstate

commerce. The Court explained that the very purpose of the Fifth Amendment Grand Jury requirement was to limit a defendant's *"jeopardy to offenses charged by a group of his fellow citizen's action independently of either the prosecuting attorney or judge"*. *Id*. at 218 (emphasis added).

The Court concluded that the deprivation of the defendant's *"substantial right to be tried only on charges presented in an indictment returned by a grand jury... is far too serious to be... dismissed as harmless error.* 361 U.S. at 217 (emphasis added).

The principle of *Bain* and *Stirone*, that an indictment charging all of the essential elements of the offense is a jurisdictional prerequisite to conviction for that offense, was reaffirmed by the Supreme Court, again in *Russell v. United States*, 369 U.S. 749, 771-71 (1962). There, the Supreme Court reiterated that an indictment which fails to charge the essential elements of the offenses may not be amended or saved by any means other than a vote by the grand jury. *Id.*

In *Almendarez-Torres,* 523 U.S. at 224, the case in the *Jones, Apprendi* line that directly addressed the Fifth Amendment right to indictment by grand jury, the defendant had plead guilty and admitted the recidivism factor that was used to increase his maximum sentence under the illegal reentry statute. His sole argument was that this sentence was illegal because the recidivism factor was an element of the offense that had not been charged in the indictment and that he could only be

sentenced on his conviction of the lesser offense of simple reentry. In a 5-4 decision, the Court held that recidivism was not an element, but only a sentencing factor.

*Because Justice Thomas has since repudiated that decision and has joined the view of the four dissenters in Almendarez, Apprendi 530 U.S. 501-22 (Thomas, J., concurring), the dissenting opinion of Justice Scalia in Almendarez-Torres now represents the majority view of the Supreme Court:*

> **Prior conviction of an aggravated felony being an element of the [separate greater] offense, must be charged in the Indictment.** *Since it is not, petitioner's sentence must be set aside.*

*Id.* 523 U.S. at 249 (emphasis added)

Finally, in his concurring opinion *Apprendi* Justice Thomas exhaustively reviewed precedent from the time of this nation's founding through the Civil War, in cases where the indictment charged only a lesser offense but the defendant was sentenced based on an aggravating fact not charged in the indictment. *Apprendi* 530 U.S. at 501-505. In each case, the courts held that the defendant could only be sentenced for the lesser charged offense. *E.g., Hope v. Commonwealth,* 50 Mass. 134 (1845*); Lamed v. Commonwealth,* 53 Mass. 240, 242, 1847 WL 3962 (1847); *Lacy v. State,* 15 Wis. *13, 1862 WL 951 (1862). The rule that a sentence for a different offense than that charged by the indictment must be vacated, and cannot simply be cured by a court's determination that the grand jury would have or

should have charged another offense, is thus as well established as any rule in American jurisprudence.

The reason for this rule have to do with the paramount importance that the Framers attached to the independence of the grand jury as a buffer between the government and the individual and the bulwark against prosecutorial over reaching. *United States v. Diosnisio,* 410 U.S. 1, 17-18 (1973) (the grand jury's constitutional mission" is to serve as a "protective bulwark standing solidly between the ordinary citizens and an overzealous prosecutor"). The Fifth Amendment bar to prosecution except on an indictment by Grand Jury guarantees far more than the right to notice of the charges. Just as fundamental, if not more, is the grand jury's independence from the government. *Id.    United States v. Calandra*, 414 U.S. 338, 342-43 (1974); *Ex parte Bain,* 12 U.S. at 11 (all emphasizing that the grand jury's constitutional rule is its independence).

The grand jury has unfettered discretion to charge or not charge an offense, even if it is made out by the evidence. *Vasquez v. Hillary*, 474 U.S. 254, 264 (1986). Therefore, a court cannot possibly decide whether the grand jury would have charged a greater offense; only, at most, whether it could have charged it. *Id.* (Hindsight determination of probable cause does nothing to suggest that properly constituted grand jury would have indicted). A rule permitting a court to simply fill in the missing element for the grand jury would eviscerate the very essence of the

grand jury guarantee: the discretion and judgment of the body of independent citizens.

### C. Consistent With Supreme Court Precedent A Sentence For A Crime Who's Elements Were Not Charged By The Grand Jury Is Per Se Reversible Error

The rule that the failure of the indictment to charge an element of the offense is an absolute bar to sentencing for that offense has been applied by the Supreme Court and other circuits in cases dealing with constructive amendment of the indictment. The constructive amendment cases, all of which explicitly follow *Stirone* and whose reasoning is based in the direct prohibition in the Fifth Amendment, compel the rule applied by the Supreme Court.

Where as in *Stirone,* when the district court has allowed a conviction for a greater crime than that charged by the grand jury, the court has improperly amended the indictment at the time of sentencing. Another longstanding line of cases, dealing with indictments that are missing an essential element of the offense and are therefore insufficient to charge an offense, likewise compel the Supreme Court's rule that a sentence for a crime that was not charged by the grand jury must be vacated without reference to the plain error or harmless error doctrine. *United States v. Foley*, 73 F.3d 484, 488 (2nd Cir. 1996)(where indictment is missing essential element of the offense there is such a fundamental violation of the Fifth Amendment that vacatur is required regardless of failure to object); *United States*

*v. Prentiss,* 206 F.3d 960, 965 (10th Cir. 2000) (failure of indictment to allege essential element of offense is a jurisdictional defect that may not be waived by a guilty plea and requires vacatur of the sentence); *United States v. Spinner*, 180 F.3d 514, 516-17 (3rd Cir. 1999); (same*); United States v. Montilla,* 870 F.2d 549, 552 (9th Cir. 1989), amended at 907 F.2d 115 (1990); *United States v. Rivera,* 879 F.2d at 1247, 1251 (5th Cir. 1989) (failure of indictment to allege an essential element of offense is a jurisdictional defect that is not subject to harmless error review and is not waived by stipulation to facts at trial). These cases, like the constructive amendment cases, are grounded in the fundamental prohibition against federal prosecutions based on anything less than a vote by a grand jury. They explicitly follow the Supreme Court's holding in *Bain, Stirone* and *Russell.*

In Mr. Trujillo's case, where the indictment alleged one offense, but Mr. Trujillo was sentenced for a separate, greater offense, there is no distinction that can logically lead to different conclusion. In this situation, the indictment has failed to allege an essential element of the offense of conviction and sentence. It matters not what other crimes have been charged in the indictment or whether any other crimes have been charged in the indictment. The indictment is still insufficient to charge any offense beyond those whose elements that are specified.

Any conviction for an offense that has not been charged rests on an indictment that is fatally defective with respect to that offense (emphasis added). *Cf. Apprendi*

530 U.S. at 473 (... issue is whether the sentence is permissible for the offense charged in the challenged count, regardless of other counts alleged in the indictment).

Example, if an indictment purported to charge two separate offenses, importation of cocaine and possession with intent to distribute cocaine, but failed to allege the defendant brought the cocaine into the United States, there is no doubt that the indictment would be insufficient, or defective, with the respect to the importation charge. The same analogy must be reached in a case where Mr. Trujillo has been charged with illegal entry in the United States under Title 8 U.S.C. § 1326(a) & (b)(2), ... where the indictment failed to not only list the element of his "prior felony conviction" which is *imperative* in the imposition of the sentence, but also fails to list the correct statute penalty provision which is also *imperative* in placing Mr. Trujillo on notice of the charge he must defend against.

In the previous example, the sentence for importation charge would have to be vacated. That indictment sufficiently charged the possession count; however, it would have no bearing on the court to sentence the defendant in the uncharged penalty provision, thus depriving the court of jurisdiction to impose a sentence on the defective portion of the indictment. There is no reason in law or logic for distinguishing between that scenario and an indictment that sufficiently alleges the offense of illegal entry into the United States with a statutory maximum of 2 years,

but is insufficient to allege the separate offense of the penalty provision for the "prior aggravated felony" conviction. The end result is the same, the District Court will amend the indictment if it sentences Mr. Trujillo to any sentence other than the one alleged in the indictment. The conviction and sentence of an uncharged offense is barred by the Fifth Amendment.

Whether the court is deemed to be without jurisdiction, or simply without authority or power to impose an illegal sentence, these various lines of cases -- the *Bain* 'jurisdictional defect analysts and its progeny, the *Stirone* line of "constructive amendment" cases, and the cases holding that an illegal sentence cannot stand -- all converge in a single point: the grand jury indictment defines the crime charged and the outer limits of the defendant's sentence, and a sentence beyond those limits cannot stand. *See Apprendi*, 530 U.S. at 483, n. 10 (American legal practice from founding through the present points to "a single, consistent conclusion: *The Judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by a jury"*). (emphasis added)

Based on the foregoing argument and case law authority, Mr. Trujillo respectfully prays that this Honorable Court **GRANT** his request for a Certificate of Appealability due to his attorney's failure to petition the Court for dismissal of the indictment due to the improper amending of the indictment by the District Court at sentencing.

31

Mr. Trujillo has clearly shown a direct violation of his Sixth Amendment right to effective assistance of counsel, and his Fifth Amendment right to be tried only on the charges presented by the Grand Jury, in accordance with the Supreme Court's line of decisions as presented in *Ex parte Bain,* 121 U.S. 1 (1887); *Stirone v. United States*, 361 U.S. 212 (1960); *United States v. Reese*, 92 U.S. 214 (1875); and *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

**V. A CERTIFICATE OF APPEALABILITY IS REQUIRED TO DETERMINE IF MR. TRUJILLO IS SUFFERING A SUBSTANTIAL FIFTH AMENDMENT VIOLATION WHEN THE INDICTMENT LACKS THE PHRASE "SUBSEQUENT CONVICTION FOR COMMISSION OF A FELONY" AND/OR "SUBSEQUENT TO A CONVICTION FOR A COMMISSION OF AN AGGRAVATED FELONY" WHICH ARE ELEMENTS REQUIRED FOR THE IMPOSITION OF SENTENCE BY THE DISTRICT COURT**

The plain meaning of Section § 1326 defines separate offenses in subsections (b)(1) and (b)(2), requiring pleading and proof beyond a reasonable doubt. The statute incorporates by reference using the phrase "any alien described in such subsection" to state all the elements of a separate offense in each subsection. The statute itself provides nothing to detract from the traditional view that each ingredient of the offense must be pleaded and proved at trial.

The plain meaning view is strongly reinforced by the context and structure of the statute. The adjacent statute, Section § 1325, contains two levels of punishment, the greater of which depends on a prior conviction which must be

pleaded and proved beyond a reasonable doubt. Congress referred to subsection §
1326(b) as an "offense" in subsequent legislation. The complexity of factual and
legal questions to establish "subsequent to a conviction" and "aggravated felony"
under immigration law militate in favor of a requirement of pleading and proof
beyond a reasonable doubt.

The Ninth Circuit, from which over half the Section § 1326 cases are
prosecuted; views subsection § 1326(b) as enumerating separate offenses.

An array of policy considerations guide prosecutors' decisions whether and
how to charge an illegal reentry case. Prosecutorial discretion is inappropriately
limited by the stark options of no prosecution or the alternatives of a petty offense
or the twenty-year maximum. Traditionally, each fact that must be established to
impose the maximum punishment must be charged as an element under the Fifth
Amendment's Indictment Clause and proved beyond a reasonable doubt under the
Fifth Amendment's Due Process Clause.

In construing a statute, its plain meaning is the guiding principle. *United States
v. Gonzales*, 117 S.Ct. 1032, 1034 (1997); *Bailey v. United States*, 116 S.Ct. 501,
506 (1995). When the text speaks with clarity to an issue, in all but the most
extraordinary circumstances, inquiry into the meaning of the statute is complete.
*United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989) *Rubin v.
United States*, 449 U.S. 424, 430(1981).

Incorporation by reference, using phrases such as "described in such subsection," is a standard tool of legislative drafting. Indeed, the immigration laws are rife with incorporations by reference.[14]  The adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length. *Engel v. Davenport*, 271 U.S. 33, 38 (1926); *Kendall v. United States ex rel. Stokes*, 12 Pet. (37 U.S.) 524, 625 (1838).

## A. The Structure And Context of The Statute Establish That Subsections (b)(1) and (b)(2) Describe Separate Offenses

The statutory structure and context of Section § 1326 support the conclusion that each subsection states a separate offense. See *Bailey*, 116 S.Ct. at 505-06; *Hubbard v. United States,* 115 S.Ct. 1754, 1758 (1995). Judicial construction of Section § 1325, substantially predating the creation of subsection (b), established

---

[14] The statute states on its face (with the incorporation highlighted):

(b) Notwithstanding subsection (a) of this section, in the case of any alien who

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his re- embarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

(3) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both;

(4) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title 18, imprisoned not more than 15 years, or both.

that prior convictions had to be pleaded and proved beyond a reasonable doubt.

The same pattern is followed in subsection 1326(b). The unique Immigration and Naturalization Service definitions of "conviction" and "aggravated felony" militate in favor of treating the separate facts as necessary elements of the offenses, as does subsequent legislation.

### 1. The Parallel Statute, Prohibiting Evasion Of INS Inspection, Treats The Prior Conviction As An Element Of The Offense

At the same time it first enacted Section § 1326, Congress created in their present form parallel crimes for entering without inspection, regardless of prior deportation. *See* U.S.C. § 1325 (1994) (amended 1996). This statute includes an increase in the statutory maximum from six months to two years "for a subsequent commission of any such offense." *Id.*

The Ninth Circuit, by a panel including now-Justice Kennedy, found that the government's failure to prove a prior "conviction" foreclosed the two-year offense. See, *United States v. Arambula-Alvarado*, 677 F.2d 51, 52 (9th Cir.1982)

Applying the Supreme Court's requirement that criminal statutes must be narrowly construed in favor of the accused, the court held that "proof of a former 'conviction,' the Petitioner should not have been given a felony sentence." *Id.* The Ninth Circuit clarified its section § 1325 decision, holding that proof of the "conviction" did not require a certified copy of the judgment; other evidence could suffice. *United States v. Arriaga-Segura*, 743 F.2d 1434 (9th Cir.1984).

In doing so, the court reinforced the holding that the prior conviction was an element of the offense: The Government clearly must prove beyond a reasonable doubt more than 'a subsequent commission of any such offenses'; it *10 must prove an actual conviction" *Arriaga-Segura*, 743 F.2d at 1436.

Separate offenses have been applied in practice for years. When Congress promulgated subsection (b) in 1988, the legislature is presumed to have known the judicial interpretations of the sister statute and intended a consistent reading. See generally *Cannon v. University of Chicago*, 441 U.S. 677, 696-97 (1979); 2B Norman J. Singer, SUTHERLAND STAT. CONST. § 51.01-03 (5th ed., 1992 and 1996 Supp.) (Interpretation by reference to related statutes).

The prosecutors and courts in the Ninth Circuit proceeded to apply the Section § 1325 construction to Section § 1326 without difficulty.

### 2. The Courts Have Consistently And Rationally Interpreted Subsection 1326(b) As Creating Separate Offenses Based On The Plain Meaning Of Statute, Construction Of The Statute With Section 1325, And Prosecutorial Charging Practices

The Ninth Circuit first addressed subsection § 1326(b) in connection with the charging policy of the United States Attorneys office in the Southern District of California. The government initially charged the defendant, Mr. Arias-Granados, with reentry following a deportation subsequent to a felony conviction, a crime "then punishable by a statutory maximum of five years." *United States v. Arias-Granados*, 941 F.2d 996, 997 (9th Cir.1991). Pursuant to plea negotiations, Mr.

36

Arias-Granados entered a guilty plea "to one count of 8 U.S.C. § 1326(a), simple reentry after deportation," punishable by a maximum of two years incarceration. *Id.* 941 F.2d at 997. The parties and the court treated the offenses as separate.

The only issue on appeal was whether the sentencing guidelines should still reflect the higher punishment within the statutory maximum based on the higher guideline for reentry after a felony conviction. The court approved the exercise of charging discretion -- A prior felony conviction is an element of the crime with which appellants were charged, 8 U.S.C. § 1326(b)(l), but is not an element of the crime to which they pleaded guilty, 8 U.S.C. § 1326(a)" -- and affirmed the sentences based on the applicability of the guideline enhancement as relevant conduct under U.S.S.G. § 1B1.3(a)(4). See *Arias-Granados*, 941 F.2d at 998. The court drew a clear line between charging discretion that limited the statutory maximum and application of the guideline range within that maximum sentence. *Id.*

Plea bargaining practice regarding different charges came before the Ninth Circuit again in *United States v. Campos-Martinez*, 976 F.2d 589 (9th Cir.1992).

There, the defendant pleaded guilty to an indictment with no allegation of a prior conviction. The defendant asserted the failure to plead the element of subsection § 1326(b)(1) that would increase the statutory maximum foreclosed a sentence in excess of two years. The Ninth Circuit agreed. The court found the

statutory interpretation in *Arias-Granados* was correct that "subsections § 1326(a) and § 1326(b)(l) describe different crimes with different elements and maximum sentences." *Campos-Martinez*, 976 F.2d at 591. The court also found that Section § 1325, which the government conceded stated two separate offenses distinguished by a prior conviction, supported its interpretation of the face of the statute: "sections § 1325 and § 1326 form the core of the illegal entry prohibitions of the United States Code, and both statutes provide that a previous criminal conviction may result in a longer sentence." *Campos-Martinez*, 976 F.2d at 591.[15] The court held the "indictment must include the element that the person was convicted of a prior felony." *Id. Campos-Martinez*, 976 F.2d at 592.

In *United States v. Gonzalez-Medina*, 976 F.2d 570 (9th Cir.1992), three defendants went to trial on indictments in the District of Washington that did not charge any prior offenses. The government did not plead or prove the requisite facts for a subsection § 1326(b)(1) or § (b)(2) offense. The court held that "the three subsections identified different crimes, the elements of which must be proven at trial and not simply at sentencing." *Gonzalez-Medina*, 976 F.2d at 571.

In doing so, the court relied heavily on its earlier ruling in *Arias-Granados*, holding that "sections § 1326(a) and § 1326(b)(1) (and, a fortiori, § 1326(b)(2))

---

[15] The court interpreted the statutes consistently based on similarities "in structure, operation, purpose, and subject matter." *Campos-Martinez*, 976 F.2d at 592

constitute separate crimes -- and not merely a single offense with different sentencing criteria -- the government was obligated to putt on evidence of the defendants' prior felony convictions if it intended to prosecute them under subsection § 1326(b) instead of the lesser included offense of § 1326(a)." *Id. Gonzalez-Medina*, 976 F.2d at 572.

In the court of appeals with jurisdiction over the most felony Section § 1326 prosecutions, the language and context of the statute establish that "§ 1326(a) and (b) stand alone, each with its own elements and sentencing provisions." *United States v. Oliver*, 60 F.3d 547, 553-54 (9th Cir.1995). Recently, the Ninth Circuit reinforced its view of the statute en banc when it upheld the dismissal of an indictment under subsection § 1326(b)(2) for failure to properly allege an aggravated felony. *United States v, Gomez-Rodriguez*, 96 F.3d 1262, 1265 (9th Cir. l996) (en banc).

### 3. The Unique and Complex Proof Requirements Regarding "Convictions' and "Aggravated Felonies" Under INS Law Militate in Favor Of Treatment Of Subsection (b) as Stating Separate Offenses

At the time Congress promulgated subsection (b), immigration law provided unique and complex potential grounds for defenses which militate in favor of requiring pleading and proof beyond a reasonable doubt. Under applicable immigration law, a "conviction' was not final unless all appeals were exhausted or

the period to appeal had expired. Further, amendments to the definition of "aggravated felony" created factual questions regarding charging and proof.

### a. The finality of a conviction under subsection 1326(b) is a potentially complex question of law and fact.

Under subsection 1326(b), the increase in maximum sentence applies only where the deportation is "subsequent" to a felony or aggravated felony. In *Marino v. INS,* 537 F.2d 686, 691 (2nd Cir. 1976), the court provided a narrow definition of "convicted" under the immigration laws:

> [A]n alien is not deemed to have been "convicted" of a crime under the Act until his conviction has attained a substantial degree of finality ... such finality does not occur unless and until direct appellate review of the conviction (as contrasted with collateral attack) has been exhausted or waived.

The INS adopted regulations applicable to immigration crimes codified the case law.[16] The agency's construction of the term is entitled to deference. *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843 (1984).

The question whether the deportation is 'subsequent" to a conviction becomes a relatively complex factual question. If, for example, the deportation follows quickly upon the imposition of a sentence to time served or probation, the

---

[16] Congress adopted a new version of "conviction" in 1996. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, § 322, 110 Stat. 3009-1570, 3009-1703 (1996) (codified at 8 U.S.C. § 1101(a)(48) (1996)). The INS later withdrew 8 C.F.R. § 242.2(b), 62 Fed.Reg. 10,312, 10,382 (March 6, 1997). The new definition would not apply to Mr. Trujillo under the Ex Post Facto Clause. The importance of the earlier definition of "conviction" is the light it sheds on the offenses created by Congress in 1988 by promulgating subsection (b).

conviction will not be final at the time of the deportation because the time within which to appeal may not have expired. If an appeal is filed, the conviction may not become final for months, or years, while the case winds its way through the appellate courts. In fact, there is nothing in the record before this Court to establish that Mr. Trujillo's prior convictions were not appealed and were still pending at the time of his deportation.

The need to focus the parties and the court on when the judgment was final, and on the potential "subsequent" defenses, militates in favor of treating as an element facts which may result in a much lower statutory maximum.

### b. Whether a felony qualifies under subsection § 1326(b)(2) is a question of law and fact.

An additional factual matter raised in subsection § 1326(b) is whether the prior offense is a felony or an aggravated felony. Congress provided a definition of aggravated felony at 8 U.S.C. § 110l(a)(43) (1996).

The definition of aggravated felony has changed several times since the promulgation of 8 U.S.C. § 1326(b).[17] The Ex Post Facto Clause, as well as the statutory effective date, limits prosecutions where the "aggravated felony" definition becomes broader, and inclusive of the defendant, subsequent to the

---

[17] In 1988, the initial definition generally included murder, drug trafficking and weapons trafficking. Pub. L. No. 100-690, 7342, 102 Stat. 4469, 4469-70. In 1990, the definition expanded to include crimes of violence for which a term of at least five years imprisonment was imposed. Immigration Act of 1990, Pub. L. No. 101-649, § 501, 104 Stat. 4978, 5048. In 1996, the definition was once again altered to be more expansive. Antiterrorism And Effective Death Penalty Act of 1996, Pub. L. 104-132, § 440(e), 110 Stat, 1259, 1277.

commission of the offense.[18] The function of focusing both the prosecution and the defense on the question by formal notice and proof beyond a reasonable doubt favors consideration of the fact - "aggravated felony - as an element of the offense.[19]

### 4. Subsequent Immigration Legislation Supports The Requirement Of Pleading And Proof Of Subsections (b)(l) And (b)(2).

In 1996 Congress added subsections (b)(3) and (b)(4) to Section 1326. Each creates a new offense, mirroring the patterns of subsections (b)(1) and (b)(2). The only difference is that, because of minor changes in the description of the aliens, incorporation by reference is not used. The subsequent legislation demonstrates the legislative view of the relevant factors as elements of the offense.

Further, in 1996 Congress directed the Sentencing Commission to address the new statutory maxima for subsection § 1326(b) violations created in 1994. In doing so, Congress referred to subsections § 1326(b)(1) and (b)(2) as "offenses."

Although subsequent to enactment, the reference reflects the view that the subsections are separate crimes.   In the 1996 amendments, Congress used "penalties" in a broad, generic sense denoting the consequences of punishable

---

[18] See e.g., *United States v. Gomez-Rodriguez*, 96 F.3d 1262 (9th Cir. 1996)(en banc); *United States v. Munoz-Carna,* 47 F.3d 207, 208-09 (7th Cir. 1995)

[19] The need for notice and attention to this element in a criminal case is especially important for three reasons: 1) INS law is a specialty area not easily accessible to the uninitiated; 2) Section § 1326 defendants are almost always unable to retain private immigration lawyers; and 3) the numbers of immigration specialist available through the Criminal Justice Act is limited.

offenses consisting of a number of elements. *Id.* 8 U.S.C. § 1326(c). This sheds light on the use of the section § 1326 title of "criminal penalties for certain deported aliens." Rather than indicating a penalty section, "penalty" is used, as it is throughout immigration statutes, in its general sense. This supports the suggestion that some courts have read too much into the title. The bifurcated structure of § 1326 and the apparent incorporation of the elements of subsection (a) into subsection (b) might also suggest that Congress intended the broad title of the offense ("reentry of deported alien") to apply to both separate offenses in the different subsections. *United States v. Forbes*, 16 F.3d 1294, 1298 (1st Cir. 1994) (citing *United States v. Vasquez-Olvera*, 999 F.2d 943, 949 (5th Cir. 993) (King, J., dissenting)); see also *United States v. Vieira-Candelario,* 811 F.Supp.   762,   767 (D.R.I. 1993).

## B. Construction Of Subsections (b)(l) And (b)(2) As Separate Offenses Respects The Rights To Grand Jury Indictment And Proof Of Elements Beyond a Reasonable Doubt

Section § 1326 should be read consistently with historical, procedural, and constitutional requirements of indictment and proof Due process. The Sixth Amendment requires that the government prove, and the jury find beyond a reasonable doubt, each element of an offense. *Mullaney v. Wilbur*, 421 U.S. 684 (1975); *In re Winship*, 397 U.S. 358 (1970). Criminal statutes routinely require proof of a prior conviction beyond a reasonable doubt. *See Lewis v. United States,*

445 U.S. 55 (1980); *Moore v. Missouri,* 159 U.S. 673, 676-77 (1895); *LaFave and Scott,1* SUBSTANTIVE CRIMINAL LAW (West 1986) § 1.8 at 69.

The Fifth Amendment requires that federal felonies be charged by indictment. U.S. Const. Amend. V.[20] The traditional requirements that every ingredient of an offense must be charged and proved beyond a reasonable doubt are of ancient provenance. *United States v. Gaudin*, 115 S.Ct 2310, 2313-15 (1995); *Smith v. United States,* 360 U.S. 1, 9 (1959). The historical practices have coalesced into federal procedural rules which require an indictment stating the essential facts constituting the offense charged Fed. R. Crim. P. 7(c)(l)) and, at the time of a guilty plea *(not sentencing),* advice regarding the nature of the charge and maximum punishment (Fed. R. Crim. P. 1l(c)(1)).

The Supreme Court has recognized that elements that increase statutory maxima are subject to constitutional protections. *McMillan v. Pennsylvania*, 477 U.S. 79, 87-88 (1986); *Mullaney*, 421 U.S. at 698-99. The elements interpretation of subsection § 1326(b) is supported by constitutional procedural, and historical norms.

Accordingly, the plain meaning of the statute is that subsections § 1326(b)(1) and (b)(2) describe separate offenses. This result is strongly supported by the

---

[20] *Cf. Graham v. West Virginia,* 224 U.S. 616, 627 (1911) (prior conviction could be charged by information because right to grand jury indictment is inapplicable to the states under *Hurtado v. California,* 110 U.S. 516 (1884))

structure of the statute, traditional charging discretion, and constitutional norms.

Thus, Mr. Trujillo requests that a Certificate of Appealability must be issued to determine if a sentence that is in excess of the statutory maximum of two years should be reversed .

## VI. A CERTIFICATE OF APPEALABILITY SHOULD BE ISSUED ON THE DISTRICT COURT'S FAILURE TO GRANT AN EVIDENTIARY HEARING ON THE MERITS OF MR. TRUJILLO'S § 2255 PETITION

Relying on the Supreme Court's decision of *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000), Mr. Trujillo requests that a Certificate of Appealability be issued on the Court's failure to grant an evidentiary hearing on the merits of his § 2255.

In the instant matter, Mr. Trujillo was not only making allegations of ineffective assistance of counsel, but also making allegations of an enhanced sentence due to counsel's unprofessional errors.

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court, which imposed the sentence to vacate set-aside or correct the sentence. This section also provides as follows:

"Unless the motion and the files and records of the case *conclusively show that the prisoner is entitled to no relief*, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing

thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records."

These allegations required the Court to hold an evidentiary hearing under well settled law. *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record *"conclusively show"* petitioner entitled to no relief); *Virgin Islands v. Weatherwax,* 20 F.2d 572, 573 (3rd Cir. 1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim *where facts viewed in light most favorable to petitioner would entitle him to relief*); *Stoia v. United States,* 22 F.3d 766, 768 (7th Cir. 1994)(same); *Shaw v. United States,* 75 F.3d 1137, 1145-46 (7th Cir. 1999)(petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (4th Cir. 2000)(petitioner entitled to evidentiary hearing when motion presented colorable claim and unclear whether counter affidavit disputed defendant's allegations.)

The Supreme Court in *Slack v. McDaniel*, *supra,* laid the foundation for situations such as the current one. The issue of whether a Certificate of Appealability should be granted on an issue where *"reasonable jurists could*

*debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.;'" Id.* at 483-84, 120 S.Ct. 1595, the grating of a Certificate of Appealability would be appropriate.

Based on the foregoing, Mr. Trujillo respectfully requests this Honorable Court **GRANT** a Certificate of Appealability to review the Court's failure to grant an evidentiary in accordance with statutory provisions of Title 28 U.S.C. § 2255 and in accordance with Fifth Circuit precedent case law.

## CONCLUSION

WHEREFORE, Petitioner, Inocencio Trujillo, respectfully prays that this Honorable Court **GRANT** this request for a Certificate of Appealability on the merits presented herein as Mr. Trujillo is suffering a substantial violation of his Constitutional right to effective assistance of counsel as guaranteed by the Sixth Amendment.

Done this 20*TH* day of March 2003.

Respectfully submitted,

Inocencio Trujillo, *pro-se*
Reg. 11249-179
Eden Detention Center
P.O. Box 605
Eden, TX 76837

47

## CERTIFICATE OF SERVICE

I HEREBY DO CERTIFY that a true and correct copy of this Request for a Certificate of Appealability was mailed to: A.U.S.A. Mark M. Dowd, U.S. Attorney's Office, 600 E. Harrison, Suite # 201, Brownsville, TX 78520 by placing the same in the Prison's Legal Mail Box with sufficient First Class Postage.

Done this 20TH day of March 2003.

Inocencio Trujillo, *pro-se*
Reg. 11249-179
Eden Detention Center
P.O. Box 605
Eden, TX 76837

United States District Court
Southern District of Texas
FILED

MAR 2 4 2003

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

**INOCENCIO LARA TRUJILLO**
**Petitioner,**


**vs.**                                    Docket No: (CA B-02-177)


**UNITED STATES OF AMERICA,**
**Respondent.**
_____/

## PETITIONER'S MOTION AND AFFIDAVIT FOR LEAVE TO PROCEED IN FORMA PAUPERIS PURSUANT TO TITLE 28 U.S.C. 1915

COMES NOW PETITIONER, Inocencio Lara Trujillo, *pro-se,* and respectfully moves this Honorable Court for leave to proceed in forma pauperis, in accordance with the provisions of Title 28, United States Code, Section 1915, and the Rules of his Court.

The affidavit of Mr. Trujillo in support of this motion is attached hereto. Presented herewith is Mr. Trujillo's Motion requesting a Certificate of Appealability in the District Court.

I, Inocencio Trujillo, being first duly sworn according to law, depose and say that I am the Petitioner in the above-entitled cause, and in support of my

application for leave to proceed without being required I prepay costs or fees, state: (A) because of my poverty I am unable to pay the cost of the cause; (B) I am unable to give security for the same; (C) I believe that I am entitled to the redress I seek in the cause; (D) this review is sought in good faith; (E) the nature of the cause is stated as a Motion for Certificate of Appealability to the District Court, (F) the petition raises substantial questions of constitutional law, as set forth more fully in my motion filed herewith.

I further swear that the responses which I have made to the questions and instructions below relating to my ability to pay the costs of prosecuting the appeal are true.

1) I am presently employed:

a) The amount of my salary or wages is $18.00 per month. The name and address of my employer is the Federal Prison at 605, Eden, TX 76837.

2) I have not received within the last 12 months any income from a business, profession of other form of self-employment, in the form of rent payments, interest, dividend, or other source.

3) I do not own cash or a checking or savings account (State amount if applicable $_____ ) I have the following amount in my prison trust fund account. $160.00

4) I do not own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding household furnishings and clothing).

2

5) I have no persons dependent on me for support.

6) I have read the foregoing and state that it is true and correct.

Done this 20TH day of March 2003.

Signed under penalty of
Perjury 28 U.S.C. Section
1746, this 20TH day of
March, 2002

Respectfully submitted,

Inocencio Trujillo, *pro-se*
Reg. 11249-179
Eden Detention Center
P.O. Box 605
Eden, TX 76837

3

## CERTIFICATE OF SERVICE

I HEREBY DO CERTIFY that a true and correct copy of this Motion and Affidavit to Proceed in Forma Pauperis was mailed to: A.U.S.A. Mark M. Dowd, U.S. Attorney's Office, 600 E. Harrison, Suite # 201, Brownsville, TX 78520 by placing the same in the Prison's Legal Mail Box with sufficient First Class Postage.

Done this 20TH day of March 2003.

Inocencio Trujillo, *pro-se*
Reg. 11249-179
Eden Detention Center
P.O. Box 605
Eden, TX 76837

United States District Court
Southern District of Texas
FILED

**MAR 2 4 2003**

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

**INOCENCIO LARA TRUJILLO**
     **Petitioner,**


**vs.**                                    Docket No: (CA B-02-177)



**UNITED STATES OF AMERICA,**
     **Respondent.**
_____/

## NOTICE OF APPEAL

COMES NOW, Petitioner Inocencio Lara Trujillo, *pro-se*, with this his Notice

of Appeal pursuant to Rule 4(c), of the Federal Rules of Appellate Procedure, on

the District Court's judgment entered on January 24, 2003.

Done this _20TH_ day of March 2003.

Respectfully submitted,

Inocencio Trujillo, *pro-se*
Reg. 11249-179
Eden Detention Center
P.O. Box 605
Eden, TX 76837

## CERTIFICATE OF SERVICE

I HEREBY DO CERTIFY that a true and correct copy of this Notice of Appeal as mailed to: A.U.S.A. Mark M. Dowd, U.S. Attorney's Office, 600 E. Harrison, Suite # 201, Brownsville, TX 78520 by placing the same in the Prison's Legal Mail Box with sufficient First Class Postage.

Done this 20 Th day of March 2003.

Inocencio Trujillo, *pro-se*
Reg. 11249-179
Eden Detention Center
P.O. Box 605
Eden, TX 76837